```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
  THOMAS T. PROUSALIS, JR.,               :         17cv8290
                                         :         18cv1050
                      Petitioner,         :         03cr01509
                                         :
           -v-                            :      OPINION & ORDER
                                         :
  UNITED STATES OF AMERICA,               :
                                         :
                      Respondent.         :
                                         :
-----------------------------------------X
```

DENISE COTE, District Judge:

On October 27, 2017 and February 1, 2018, Thomas Prousalis Jr. ("Prousalis") filed petitions for writ of error coram nobis to vacate his 2004 federal conviction. These are Prousalis's fourth and fifth petitions to vacate this conviction.

In his October petition for writ of error coram nobis, Prousalis contends that his counsel at his 2004 trial and sentence provided ineffective assistance to him, and that the Government withheld exculpatory evidence. Accompanying the October petition is a related motion for access to Grand Jury transcripts. In his February petition, he argues that the Government breached its plea agreement with him in arguments that it made to the Court of Appeals in 2017 in opposition to his third petition. For the following reasons, the petitions are denied.

**Background**

The procedural history of this conviction and the evidence introduced at Prousalis's trial, before it was interrupted by his plea of guilty, are described in an Opinion denying Prousalis's 2006 petition for a writ of habeas corpus. Prousalis v. United States, Dkt. No. 03cr1509 (DLC), 2007 WL 2438422 (S.D.N.Y. Aug. 24, 2007) (the "2007 Opinion").  The 2007 Opinion is incorporated by reference.  A brief summary is provided here.

Prousalis, an attorney, was arrested on January 7, 2004, on a two count indictment charging him with conspiracy to commit securities, mail, and wire fraud, and with wire fraud, in violation of 18 U.S.C. § 371 and 15 U.S.C. §§ 78j(b) and 78ff, respectively.  On May 12, a superseding indictment was filed.  It added a third count charging a violation of 15 U.S.C. § 77x and 17 C.F.R. § 228.509.  Trial began on June 7, 2004.  Eight witnesses testified at trial before Prousalis pleaded guilty.

Prousalis had acted as outside counsel to busybox.com Inc. ("Busybox") at the time of its initial public offering ("IPO") in 2000.  He explained during his allocution that he had acted with the intent to defraud investors and knew that he was violating the law in connection with various false statements and omissions in the IPO documents.

At his sentencing hearing, held on October 28, 2004, Prousalis again described his scheme to defraud.  Prousalis was sentenced principally to 57 months' imprisonment.  He was also ordered to pay restitution in the amount of $12.8 million.  Prousalis appealed his conviction.  On December 29, 2005, the United States Court of Appeals for the Second Circuit dismissed the appeal because of the defendant's voluntary waiver of his right to appeal.

On November 6, 2006, Prousalis filed a petition for a writ of habeas corpus.  The petition was denied on August 24, 2007.  Prousalis v. United States, No. 06cv12946 (DLC), 2007 WL 2348422 (S.D.N.Y. Aug. 24, 2007).  Prousalis appealed the denial of his petition.  On August 26, 2008, the Second Circuit declined to issue a certificate of appealability and dismissed the appeal because Prousalis had not made a substantial showing of the denial of a constitutional right.

On June 13, 2011, the Supreme Court decided Janus Capital Grp., Inc. v. First Derivative Traders, 564 U.S. 135 (2011).  That decision defined what it means to "make" an untrue statement in the context of a private civil action alleging a violation of Rule 10b-5.  According to the Court, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  Janus, 564 U.S. at 142.

On February 22, 2012, Prousalis filed a petition pursuant to 28 U.S.C. § 2241 in the Eastern District of Virginia, which was the site of his supervised release, arguing that the conduct for which he was convicted was no longer criminal in light of Janus.  On March 20, the district court denied the petition because "[t]he Janus decision stemmed from a line of decisions limiting judicially created private causes of action," and has no application in the criminal context and because the charges to which Prousalis pleaded guilty, including his acts of aiding and abetting the criminal conduct, fall outside the substantive scope of the Janus decision.  Prousalis v. Moore, No. 12cv134 (JAG), 2013 WL 1165249, at *6 (E.D. Va. Mar. 20, 2013), aff'd, 751 F.3d 272 (4th Cir. 2014).  The Fourth Circuit affirmed the denial of the petition.  The majority held that Janus was inapplicable outside the context of an implied private right of action.  Prousalis v. Moore, 751 F.3d 272, 276 (4th Cir. 2014).  In a concurrence, Chief Judge Traxler concluded that § 2(b) of Title 18 imposed criminal liability on one who causes an intermediary to commit a criminal act.  Accordingly, "Prousalis's willful intent to defraud, combined with Busybox's duty not to make the charged material misrepresentation and omissions, made it a crime for Prousalis to cause Busybox to make the statement at issue."  Id. at 280.  The Supreme Court

4

denied Prousalis's petition for a writ of certiorari on January 12, 2015.

On March 3, 2016, Prousalis filed a third habeas petition, pursuant to § 2241, in the United States District Court for the District of Columbia.  He again sought relief in reliance on the Janus decision.  On April 11, the petition was transferred to this Court.  On June 24, this Court transferred the petition to the United States Court of Appeals for the Second Circuit as a successive petition.

On August 22, 2016, the Court of Appeals remanded the petition to this Court to determine whether Prousalis is in custody, and if not, whether to construe his petition as seeking a writ of error coram nobis.  Prousalis v. United States, No. 16-2235, Dk. No. 13 (2d Cir. Aug. 22, 2016).  In a letter to the Court of August 27, 2016, Prousalis conceded that he did not satisfy the jurisdictional in-custody requirement for a habeas petition.  Prousalis requested that his petition be treated as a petition for a writ of error coram nobis.  Prousalis argued in the petition that the Janus decision substantively altered the Rule 10b-5 landscape, and that he was entitled to relief because he was not the "maker" of the false statements that led to his conviction for securities fraud.  This Court denied the petition on September 19, 2016.  Prousalis v. United States, No.

16cv3349, 2016 WL 4991680 (S.D.N.Y. Sep. 19, 2016) ("September 2016 Opinion).

On June 30, 2017, the Court of Appeals for the Second Circuit affirmed the denial of the petition. It held that Prousalis's conviction would stand regardless of Janus's application in this case "because [Prousalis] allocuted to conduct that constitutes a violation of 18 U.S.C. § 2(b), which provides that '[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.'" Prousalis petitioned for certiorari, which was denied on December 4, 2017.

## Discussion

For the reasons stated in the September 2016 Opinion, the Court construes the October 2017 and February 2018 petitions as petitions for writ of error coram nobis. "A writ of error coram nobis is an extraordinary remedy, typically available only when habeas relief is unwarranted because the petitioner is no longer in custody." Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014) (citation omitted).

> [T]o obtain coram nobis relief a petitioner must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.

Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998).  For purposes of a writ of error coram nobis, the petitioner's conviction is presumed to be correct, and the burden rests on the accused to show otherwise.  Foont v. United States, 93 F.3d 76, 78-79 (2d Cir. 1996).  The February petition will be addressed first.

February 2018 Petition

In the February 2018 petition Prousalis contends that the Government breached the plea agreement pursuant to which he entered his plea of guilty when it argued on appeal to the Court of Appeals that his conviction was unaffected by Janus. Specifically, it argued that, even if Janus were applicable, Prousalis would still be guilty of aiding and abetting under § 2 of Title 18.  Prousalis admits that § 2 was listed as an offense in the Indictment, but asserts that the acts of aiding and abetting were not described with "especial particularity" in the plea agreement.

The February petition is a frivolous petition.  It does not come close to presenting grounds that would support resort to the extraordinary remedy available through this writ.

First, there was no breach of the plea agreement.  The section of the plea agreement Prousalis claims the Government breached reads:

> In consideration of his plea to the above offense[s], the defendant will not be further prosecuted criminally by this Office . . . for his participation in the scheme to cause false statements and knowing misrepresentations to be made to investors in the initial public offering of busybox.com Inc., as charged in Counts One, Two, and Three of the Indictment.

The United States Attorney's Office for the Southern District of New York did not "further prosecute[]" Prousalis by arguing a basis on which the convictions to which he pleaded guilty could be sustained.  The cited provision of the plea agreement bars procurement of a new indictment arising out of the same conduct.  It does not proscribe the continuation of the prosecution that is the subject of the agreement.  Nor did the Government constructively amend the indictment to which Prousalis pled guilty by advancing a § 2 theory to support Prousalis's conviction based on his plea of guilty.  This is particularly so when that theory of liability was explicitly charged in the indictment.  See United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994).  There is simply no reasonable basis to suggest that the Government breached the plea agreement with Prousalis when it included the § 2 analysis in its brief on appeal.

Moreover, there is no basis to find that the result of the appeal was in any way affected by the argument made in the Government's brief.  This Court's September 2016 Opinion rejecting Prousalis's third petition included as one of the

8

grounds for its denial that Prousalis's conduct constituted an offense under § 2.  Prousalis himself discussed this ground in his brief on appeal.[1]  For the Second Circuit to have reversed Prousalis's conviction, it would necessarily have had to conclude that this Court's § 2 analysis was wrong -- regardless of whether the Government advanced that position in its brief.  Cf. Irizarry v. United States, 553 U.S. 708 (2008) (affirming decision based on grounds relied upon by court below despite their explicit rejection by government).  Prousalis cannot show that, but for the Government's agreement with this Court on appeal, that the Second Circuit would have reversed the denial of the petition for writ of error coram nobis.

In addition, as an officer of the Court, the Government had a duty to advise the Court of Appeals of its view of the merits of the decision rendered by the district court.  For its part, the Court of Appeals was entitled to hear the Government's views on that analysis.  There would be grave consequences to our system of justice if a plea agreement were interpreted to restrict a party's right (or obligation) on appeal to address the merits of a legal analysis.  The February 2018 petition must be denied.

---

[1] Judge Traxler's concurrence in the Fourth Circuit's rejection of Prousalis's second petition also included a § 2 analysis.

October 2017 Petition

In his October 2017 petition for writ of error coram nobis, Prousalis raises three issues, each asserting that his retained counsel at trial and sentence provided ineffective assistance, and as to two of the issues, asserting prosecutorial misconduct as well. First, he argues that counsel did not disclose that Prousalis was innocent of one of the three counts to which he pleaded guilty, the count charging Prousalis with a violation of 17 C.F.R. § 228.509 ("Section 509"). Section 509 requires disclosure of the interest of counsel in registration materials, and Prousalis contends that that section only applies to small business issuers and not to him in his role as outside counsel. Second, he asserts that defense counsel failed to advise Prousalis that he could be liable for "substantial" restitution and that restitution is a non-dischargeable debt in bankruptcy proceedings.[2] Third, he asserts that defense counsel failed to share with him a Government letter, described below, regarding his attempted filing of a Schedule 13D with the SEC, and that the prosecutors presented false evidence to this Court.

---

[2] The amount of restitution imposed was set out in the Pre-Sentence Report, which Prousalis read before his sentencing. At the sentencing, defense counsel represented that Prousalis had reviewed the report and discussed it with counsel. Prousalis, who spoke at length at his sentencing, never disagreed with that representation.

This is not the first time that Prousalis has accused his retained counsel of providing him with ineffective assistance or raised claims challenging the conduct of the prosecutors. Prousalis's first petition made a series of charges against his counsel.  As described in detail in the 2007 Opinion dismissing that petition, Prousalis had praised his counsel at a Curcio proceeding and indicated his satisfaction with them again at the time he pleaded guilty.  2007 WL 2438422, at *3.  Prousalis's current complaints about his attorneys have no more merit than those he made in his first petition, which this Court denied.

It is unnecessary to explain the serious deficiencies in the first two complaints Prousalis makes about his attorneys or prosecutors, however, because the complaints must be denied on a completely independent ground.  These two claims should have been raised on direct appeal or in his first petition and Prousalis has provided no basis to find that they are timely raised in this, his fourth petition, filed nearly thirteen years after his conviction.

The defendant's final claim of ineffectiveness and prosecutorial misconduct is also untimely and meritless.  To understand why, however, some background explanation is required.

Prousalis was charged with and pleaded guilty to a scheme in which, among other things, he caused to be filed with the SEC

11

Busybox registration materials that failed to disclose that he would receive legal fees for his work in connection with the IPO only if the IPO closed and that failed to disclose that he was receiving fees in the form of Busybox securities. His retainer agreement had provided that he would be paid the higher of $375,000 or 7.5% of the IPO proceeds. The registration materials listed only the fee of $375,000, omitting the 7.5% of the IPO proceeds. That 7.5% was worth over $1 million. Prousalis understood and allocuted that the failure to disclose the 7.5% in the registration statement and the conditional nature of his compensation were both material omissions. Prousalis also admitted that a disclosure of the 7.5% fee may very well have jeopardized the IPO's listing on the NASDAQ.

As described above, Prousalis entered his plea of guilty in the middle of the trial. In pretrial proceedings, Prousalis had claimed that he had "cured" the defects in the IPO's Registration Statement by filing (or attempting to file) a Form 13D which accurately showed his payment terms. That was not true. Prousalis had never submitted to the SEC the Form 13D that Prousalis presented to the Court and to the Government in advance of trial. (See Dkt. 54 in No. 03cr1509, Attachment D.) This fabricated document ("Fabricated 13D") reported that Prousalis was receiving 545,000 shares of common stock and 245,000 warrants for a value of $1,255,625.

In contrast, the Form 13D that Prousalis had once mailed to the SEC ("Mailed 13D") omitted his receipt of stock in the IPO and mentioned only his acquisition of warrants.  (See id., Attachment E.)  The SEC received the Mailed 13D on August 14, 2000, and had returned the Mailed 13D to Prousalis with instructions to file it electronically through the SEC's EDGAR system, which Prousalis never did.  The Mailed 13D was in any event sent well after the Busybox registration statement became effective.  In 2004, the FBI conducted a search of documents in the custody of Busybox's bankruptcy trustee and located the SEC's August 21, 2000 letter returning the Mailed 13D.  The Government promptly disclosed to the Court and defense counsel, in advance of trial, its seizure of the SEC letter and Mailed 13D.

In his petition, Prousalis accuses the Government of wrongdoing for obtaining a certificate from the SEC that states that a Form 13D could not be located in the SEC files.  He accuses his counsel of failing to share with him the Government's pretrial letter to defense counsel and the Court of May 17, 2004, which enclosed the August 21, 2000 letter from the SEC and Mailed 13D.  Prousalis has attached as an exhibit to his petition the SEC letter but no portion of the Mailed 13D.  If he had included the complete document, it would show that the Mailed 13D contained a material omission.  As already indicated,

13

that form disclosed only the receipt of the warrants, not the receipt of the shares.

This complicated history shows that Prousalis's claim of wrongdoing by the Government and by his counsel is entirely without any merit. This petition is Prousalis's third effort to deceive in connection with his alleged filing of a Form 13D with the SEC. First, at some point in 2000 after the registration statement, he mailed to the SEC (but did not file through EDGAR) a Form 13D that omitted disclosure of his receipt of stock. Then, in 2004, he presented the Fabricated Form 13D to the Government and Court in advance of his trial. Now, in his petition, he attaches just the SEC letter without the Mailed 13D and suggests that both the Government and his counsel engaged in wrongdoing. Prousalis has abused the writ.[3]

## Conclusion

Prousalis's October 21, 2017 and February 1, 2018 petitions for writ of error coram nobis are denied. The motions for access to grand jury transcripts and for entry of default are denied. The petitioner has not made a substantial showing of a denial of a federal right and, therefore, a certificate of appealability shall not be granted. Hoffler v. Bezio, 726 F.3d

---

[3] In addition, the claims are also untimely. As reflected in the sentencing transcript, Prousalis was on notice of any possible defense concerning the Mailed 13D no later than his sentencing.

14

144, 154 (2d Cir. 2013); Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk of Court shall close the civil cases, docket numbers 17cv8290 and 18cv1050.

    SO ORDERED:

Dated:    New York, New York
          July 19, 2018

                          _____
                          DENISE COTE
                  United States District Judge

COPY MAILED TO:

Thomas T. Prousalis
10501 S. Falconbridge Court
Richmond, VA 23238